# United States Court of Appeals for the Federal Circuit

---

**VOTER VERIFIED, INC.,**
*Plaintiff-Appellant*

**v.**

**ELECTION SYSTEMS & SOFTWARE LLC,**
*Defendant-Appellee*

---

2017-1930

---

Appeal from the United States District Court for the Northern District of Florida in No. 1:16-cv-00267-MW-GRJ, Judge Mark E. Walker.

---

Decided: April 20, 2018

---

ANTHONY ITALO PROVITOLA, DeLand, FL, argued for plaintiff-appellant.

ROBERT M. EVANS, JR., Senniger Powers LLP, St. Louis, MO, argued for defendant-appellee. Also represented by KYLE G. GOTTUSO.

---

Before NEWMAN, LOURIE, and REYNA, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Voter Verified, Inc. ("Voter Verified") appeals from the United States District Court for the Northern District of Florida's dismissal under Fed. R. Civ. P. 12(b)(6) of its claim for patent infringement, holding that the claims of U.S. Reissue Patent RE40,449 ("the '449 patent") are directed to patent-ineligible subject matter and are thus invalid under 35 U.S.C. § 101. *See Voter Verified, Inc. v. Election Sys. & Software LLC*, No. 1:16-cv-267, 2017 WL 3688148, at *2 (N.D. Fla. Mar. 21, 2017) ("*Voter Verified NDFL*"). For the reasons that follow, we affirm.

BACKGROUND

The '449 patent, assigned to Voter Verified, was reissued on August 5, 2008 from U.S. Patent 6,769,613, and is directed to voting methods and systems that provide for "auto-verification" of a voter's ballot. *See* '449 patent Abstract. Generally, the patent discloses a process in which a voter enters a vote into a voting system; the system generates a corresponding printed ballot; and the voter verifies the printed ballot for accuracy and submits it for tabulation. *See id.* col. 1 l. 64–col. 2 l. 40, col. 2 l. 53–col. 3 l. 11.

Before we address the issues in the current appeal, an overview of relevant events from a prior litigation is necessary. In November 2009, Voter Verified sued the predecessors of Election Systems & Software LLC ("Election Systems")[1] in the Middle District of Florida alleging infringement of the '449 patent. Election Systems, which produces and markets automated voting systems, counterclaimed that the claims of the '449 patent were invalid under §§ 101, 102, 103, and 112. In a series of summary judgment orders, the district court made various validity and infringement decisions. The court determined that

---

[1] The parties do not dispute that this means Election Systems was a party to the prior litigation.

claims 1–93 were not infringed and claim 94 was invalid as indefinite under § 112. The court then entered summary judgment in favor of Voter Verified concluding that all the claims of the '449 patent, except for claim 94, were not invalid under §§ 101 and 112, because Election Systems failed to present any arguments or evidence regarding invalidity of these claims. *See* Summ. J. Order at 18–19, *Voter Verified, Inc. v. Premier Election Sols., Inc.*, No. 6:09-cv-1968 (M.D. Fla. Sept. 15, 2010), ECF No. 155; Summ. J. Order at 20, *Voter Verified, Inc. v. Election Sys. & Software, Inc.*, No. 6:09-cv-1969 (M.D. Fla. Sept. 29, 2010), ECF No. 114; J.A. 239. No further analysis of § 101 was provided. Finally, the court dismissed without prejudice the claim of invalidity of claims 85 and 93 under § 102, having already determined that they were not infringed, but held that claim 49 was invalid under § 103, even though the court had also already determined that it was not infringed. The court additionally held that the remaining claims 1–48, 50–84, and 86–92 were not invalid under §§ 102 and 103.

Voter Verified appealed the holding of invalidity of claim 49, but not of claim 94. *See Voter Verified, Inc. v. Premier Election Sols., Inc.*, 698 F.3d 1374, 1379 (Fed. Cir. 2012). Election Systems cross-appealed the upholding of the validity of the remaining claims 1–48, 50–84, and 86–92. *Id.*

After briefing and oral argument, we affirmed the district court's invalidity judgment of claim 49 under § 103. *Id.* at 1379–81. We also determined that the district court did not err in holding that claims 1–48, 50–84, and 86–92 were not proven invalid because, in failing to respond to these arguments in its summary judgment briefing, Election Systems had not met its burden to prove its invalidity counterclaims by clear and convincing evidence. *Id.* at 1381–82. Therefore, only claims 49 and 94 remain invalid.

This brings us to the present case on appeal. In July 2016, Voter Verified again sued Election Systems, this time in the Northern District of Florida, alleging that certain voting systems and equipment made or operated by Election Systems infringed the '449 patent. Election Systems filed a motion to dismiss the complaint under Rule 12(b)(6) arguing that Voter Verified failed to state a claim upon which relief could be granted because all the claims of the '449 patent are invalid under § 101. In response, Voter Verified argued that issue preclusion, or collateral estoppel, precludes Election Systems from relitigating the § 101 issue, which it argues had already been decided in the prior litigation. Election Systems countered that issue preclusion should not apply in this case because there was an intervening change in the law. Regardless, Election Systems contended that under Eleventh Circuit law, issue preclusion would still not apply because two of the four required elements of issue preclusion were not met. Specifically, Election Systems argued that the § 101 issue was not "actually litigated" and it was not "a critical and necessary part of the judgment" in the first litigation. *See CSX Transp., Inc. v. Bhd. of Maint. of Way Emps.*, 327 F.3d 1309, 1317 (11th Cir. 2003).

The district court granted Election Systems's motion to dismiss. *See Voter Verified NDFL*, 2017 WL 3688148, at *2. The court concluded that the "two-step analysis" recited in *Alice Corp. v. CLS Bank International,* 134 S. Ct. 2347 (2014), constituted a "substantial change" in the law such that "the issue of patent validity is not precluded from further litigation." *Voter Verified NDFL*, 2017 WL 3688148, at *1–2. The district court therefore did not reach an issue preclusion analysis under Eleventh Circuit law. The court then proceeded to analyze the claims of the '449 patent under the two-step § 101 framework. First, the court determined that the patent was based on the abstract idea of "vote collection and verification." *Id.*

at \*2. Second, the court determined that the voting system was made up of "generic computer components performing generic computer functions," and that this was insufficient to transform the abstract idea into patent-eligible subject matter. *Id.* As a result, the court held that all the claims of the '449 patent were directed to patent-ineligible subject matter and thus invalid under § 101. *Id.*

Voter Verified timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review a district court's dismissal under Rule 12(b)(6) under the law of the regional circuit. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1346 (Fed. Cir. 2014). The Eleventh Circuit reviews the grant of a Rule 12(b)(6) motion *de novo*, accepting as true the complaint's factual allegations and construing them in the light most favorable to the plaintiff. *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).

Before we reach the merits of the § 101 issue, we must first determine whether the district court properly concluded that the § 101 judgment from the prior litigation does not have preclusive effect in this case for the reason that *Alice* was an intervening change in the law. *See* Wright et al., 18 Fed. Prac. & Proc. Juris. § 4425 (3d ed.) ("Preclusion is most readily defeated by specific Supreme Court overruling of precedent relied upon in reaching the first decision."); *see also Dow Chem. Co. v. Nova Chems. Corp. (Can.)*, 803 F.3d 620, 628–29 (Fed. Cir. 2015); *Wilson v. Turnage*, 791 F.2d 151, 157 (Fed. Cir. 1986) (determining that issue preclusion was inapplicable when there was an "intervening change in the legal atmosphere"). If there were a change in the law, then issue preclusion would not apply, which would allow us to reach

the merits of the § 101 issue. If, however, there were not a change in the law, then issue preclusion would still be a viable issue that we need to evaluate.

## I. Intervening Change in the Law

The district court held that *Alice* was a "substantial change" in the law such that issue preclusion does not apply here. *See Voter Verified NDFL*, 2017 WL 3688148, at *1. On appeal, Voter Verified argues that issue preclusion should apply because there was no change in the law, and *Alice* merely applied a rule from *Bilski v. Kappos*, 561 U.S. 593 (2010), which it states was the controlling law at the time the district court in the prior litigation entered summary judgment on the § 101 issue. Election Systems counters that there was a change in the law, because "the two-step analysis [was] established in *Mayo* and further refined in *Alice*." Appellee's Br. 23; *see also* Oral Arg. at 23:34–25:25, *Voter Verified, Inc. v. Election Sys. & Software LLC*, No. 17-1930 (Fed. Cir. Feb. 9, 2018), http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2017-1930.mp3.

We agree with Voter Verified to the extent that it argues that *Alice* was not an intervening change in the law, so that it does not exempt a potential application of issue preclusion. However, we ultimately conclude for the reasons that follow that issue preclusion does not apply in this case.

For the change of law exception to issue preclusion to apply, three conditions must be satisfied. First, "the governing law must have been altered." *Dow Chem.*, 803 F.3d at 629 (citations omitted). Second, "the decision sought to be reopened must have applied the old law." *Id.* (citations omitted). Third, the change in the law "must compel a different result under the facts of the particular case." *Id.* (citations omitted). Additionally, in order to be intervening, the change in the law must have occurred after the first case was finally decided. *See Wilson*, 791

F.2d at 157 ("[A] judicial declaration intervening between the two proceedings may so change the legal atmosphere as to render the rule of collateral estoppel inapplicable." (quoting *Comm'r of Internal Revenue v. Sunnen*, 333 U.S. 591, 600 (1948))).

Turning to the first condition, we conclude that *Alice*, which was decided after the first litigation ended, did not alter the governing law of § 101. In *Alice*, the Court applied the same two-step framework it created in *Mayo* in its § 101 analysis. *Alice*, 134 S. Ct. at 2355 (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77–79 (2012)). The Court stated, "[f]irst, we determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* (citing *Mayo*, 566 U.S. at 77–78). If so, it stated, one must then determine "what else is there in the claims before us?" *Id.* (quoting *Mayo*, 566 U.S. at 78). Just as it did in *Mayo*, the Court characterized the second inquiry "as a search for an inventive concept," *id.* at 2355 (internal quotation marks and citation omitted), that is "sufficient to transform the claimed abstract idea into a patent-eligible application," *id.* at 2357 (internal quotation marks and citation omitted). It is thus evident from the Court's reliance on *Mayo* that it was merely applying the same test as it set out in *Mayo*, and did not materially change it. *See id.* at 2355, 2357 (citing *Mayo* for the rule of law). We therefore hold that *Alice* did not alter the governing law under § 101.

Moreover, to the extent that Election Systems argues that *Mayo* was an intervening change in the law, we disagree because *Mayo* was not intervening. *Mayo* was decided while the first appeal was still pending before this court. After that, the only controlling decision that could be considered to have intervened is *Alice*, which issued after the first litigation. And, as we have discussed above, *Alice* did not cause a change in the law.

Because the first condition for avoiding issue preclusion has not been satisfied, we need not review the second and third conditions. Accordingly, the intervening change in the law exception does not preclude application of issue preclusion in this case.

## II. Issue Preclusion

We continue our analysis by applying the doctrine of issue preclusion. Issue preclusion serves to "preclude parties from contesting matters that they have had a full and fair opportunity to litigate," which "protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Mont. v. United States*, 440 U.S. 147, 153–54 (1979). We review a district court's application of issue preclusion under the law of the regional circuit. *Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377, 1380 (Fed. Cir. 2013). "However, for any aspects that may have special or unique application to patent cases, Federal Circuit precedent is applicable." *Id.* (citation omitted). The Eleventh Circuit reviews *de novo* a district court's determination of issue preclusion, *EEOC v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1285 (11th Cir. 2004), and requires a showing of all four of the following elements:

> (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been *actually litigated* in the prior suit; (3) the determination of the issue in the prior litigation must have been *a critical and necessary part of the judgment* in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.

*CSX Transp.*, 327 F.3d at 1317 (emphases added).

Voter Verified does not specifically argue that issue preclusion applies under the Eleventh Circuit's test. But Election Systems argues that issue preclusion should not apply because at least two of the required elements have not been met. First, Election Systems contends that by choosing not to respond to Voter Verified's arguments against its § 101 invalidity counterclaim, the issue was never "actually litigated." *See* Oral Arg. at 20:30–22:35. Second, Election Systems asserts that a determination of invalidity under § 101 was not critical or necessary to the ultimate judgment of noninfringement. *See id.* at 22:35–22:45.

We agree with Election Systems on both points. First, the § 101 issue was not actually litigated. It was in fact barely considered. The district court disposed of the § 101 issue when Election Systems chose not to respond. From the court's opinion, it appears, as Election Systems has argued, that the § 101 issue was never "actually litigated," because the court did not evaluate that question. *See* Restatement (Second) of Judgments § 27, cmt. e (1982) ("A judgment is not conclusive in a subsequent action as to issues which might have been but were not litigated and determined in the prior action.").

Second, the § 101 issue of invalidity was not necessary to the judgment in the first district court action. Whether issues of invalidity are critical or necessary to a judgment holding that a defendant is not liable for infringement is an aspect that is "special or unique" to patent cases. *Aspex Eyewear*, 713 F.3d at 1380. Validity and infringement are separate concepts. In *Cardinal Chemical*, the Supreme Court noted that invalidity and infringement were independent issues. *See Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 96 (1993) (stating that a party seeking a judgment of invalidity "presents a claim independent of the patentee's charge of infringement"). Consequently, either an invalidity or a noninfringement

determination is sufficient for a final judgment holding that a party is not liable for infringement.

In the first litigation, the Middle District of Florida held that Election Systems was not liable for infringement of the '449 patent. In so holding, the district court reached the conclusions that (1) claims 1–93 were not infringed; (2) claim 94 was invalid under § 112; (3) claims 1–93 were not invalid under §§ 101 and 112; (4) claim 49 was invalid under § 103; and (5) claims 1–48, 50–84, and 86–92 were not invalid under §§ 102 and 103. The court did not specify which of these determinations were critical or necessary to the final judgment. *See* Restatement (Second) of Judgments § 27, cmt. i (1982) ("If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone."); *cf. id.* § 27, cmt. h, illus. 14 (illustrating that in a suit for trademark infringement, a determination that the trademark is both valid and not infringed does not preclude the same defendant from the defense of invalidity in a subsequent action between the parties). Moreover, as we previously observed, the § 101 issue was not actually litigated. As a result, it is clear that the § 101 issue was not critical or necessary to the final judgment.

We therefore conclude that issue preclusion does not apply in this case, not because there was a change in law as the district court held, but because the issue of patent eligibility under § 101 was not actually litigated and it was not necessary to the judgment rendered.

### III. Patent Eligibility under § 101

Because issue preclusion does not apply here, we turn to the merits of the § 101 issue. Patent eligibility under § 101 "is ultimately an issue of law we review *de novo*." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) (italics added). Patent eligibility can be determined

at the Rule 12(b)(6) stage "when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

Under § 101, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. Under the two-step framework, we first "determine whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 134 S. Ct. at 2355. If so, then we "examine the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Id.* at 2357 (quoting *Mayo*, 566 U.S. at 72–73, 78).

Voter Verified argues that the claims of the '449 patent are directed to patent-eligible subject matter because the specification and claims describe "physical" and "human cognitive actions," which are not abstract ideas. Appellant's Br. 11. And at step two of the framework, Voter Verified contends that the district court incorrectly found that only generic computer components were required because a voter performs some of the claimed steps as well.

In response, Election Systems argues that the claims are directed to the abstract idea of "voting and checking the accuracy of a paper election ballot." Appellee's Br. 30. Furthermore, Election Systems contends that this represents only a well-established human activity. Because the patent only discloses use of general purpose computers, Election Systems argues that this is nothing more than automating a fundamental human activity, which is insufficient to transform the claimed abstract idea into patent-eligible subject matter under step two. Election

Systems additionally argues that all of the claims recite nothing more than additional abstract ideas or generic computer components.

The claims before us are claims 1–48 and 50–93 (the "remaining claims"); this excludes claims 49 and 94, which were previously finally held to be invalid. Of the remaining independent claims, claims 85 and 93 recite "self-verification" voting methods, and claims 1, 25, and 56 recite closely related self-verifying voting systems. Method claim 85 and system claim 56 are exemplary of the method and system claims and read as follows:

> 85. A method for voting providing for self-verification of a ballot comprising the steps of:
>
> (a) voting by a voter using a computer voting station programmed to present an election ballot,
>
>> accept input of votes from the voter according to the election ballot,
>>
>> temporarily store the votes of the voter;
>
> (b) printing of the votes of the voter from the votes temporarily stored in the computer for the voting station;
>
> (c) comparison by the voter of the printed votes with the votes temporarily stored in the computer for the voting station;
>
> (d) decision by the voter as to whether a printed ballot is acceptable or unacceptable; and
>
> (e) submission of an acceptable printed ballot for tabulation.

'449 patent col. 11 ll. 53–68.

> 56. A self-verifying voting system comprising:
>
> one or more voting stations comprising:

(a) one or more computer programs which operate in a computer to display general voting instructions, at least one election ballot showing the candidates and/or issues to be voted on, and directions to the voter for operation of the system;

present the election ballot for voting and input of votes by the voter;

accept input of the votes from the voter;

print out the election ballot according to which the voter voted with the votes of the voter printed thereon, so that the votes of the voter are readable on said election ballot by the voter and readable by a ballot scanning machine; and

record the votes in the computer;

(b) at least one computer with at least one display device, at least one device to accept voting input from a voter, and sufficient memory to provide for the operation of said computer program;

(c) a printer connected to said computer for printing the election according to which the voter voted;

(d) a ballot scanning machine for reading the votes on the printed ballot printed according to the election ballot which the voter voted and

a means for tabulating the printed ballots generated by said one or more voting stations.

*Id.* col. 10, ll. 7–33.

We agree with Election Systems that these claims are directed to patent-ineligible subject matter. The factual

allegations here, taken as true, do not prevent a § 101 determination at the Rule 12(b)(6) stage. While these claims encompass both methods and systems, we find there to be no distinction between them for § 101 purposes, as they simply recite the same concept. *See Alice*, 134 S. Ct. at 2360 ("[T]he system claims are no different from the method claims in substance. The method claims recite the abstract idea implemented on a generic computer; the system claims recite a handful of generic computer components configured to implement the same idea.").

First, the claims as a whole are drawn to the concept of voting, verifying the vote, and submitting the vote for tabulation. Humans have performed this fundamental activity that forms the basis of our democracy for hundreds of years. *See* '449 patent col. 2 ll. 62–66 (stating that the "voting process is ultimately founded upon the law which governs elections"); *see also* U.S. Const. art. I, § 1, cl. 1 (1789) (conveying a right in the "People of the several States" to vote). Even Voter Verified characterized these steps as "human cognitive actions." Appellant's Br. 11. These steps are therefore nothing more than abstract ideas. *Cf. CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011) ("[M]ethods which can be performed entirely in the human mind are the types of methods that embody the 'basic tools of scientific and technological work' that are free to all men and reserved exclusively to none." (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972))).

Second, there is no inventive concept in the claims sufficient to transform them into patent-eligible subject matter. Neither party disputes that the claims recite the use of general purpose computers that carry out the abstract idea. *See* '449 patent col. 6 l. 18–col. 12 l. 24 (reciting, *inter alia*, "a standard personal computer," "a visual display device," and "a keyboard"); *see also id.* col. 3 l. 12–col. 4 l. 28 (disclosing use of, *inter alia*, "data storage

devices," "a laser printer," and a scanner "from the well-known art"). The case law has consistently held that these standard components are not sufficient to transform abstract claims into patent-eligible subject matter.[2] Voter Verified's argument that these steps are not only performed by generic computer components, but also performed by a voter, was addressed under step one when they were determined to be an abstract idea. Because all of the remaining claims only recite different variations of the same abstract idea being performed with other generic computer components, we therefore conclude that the district court properly determined that the claims of the '449 patent are invalid under § 101.

---

[2] *See, e.g.*, *Alice*, 134 S. Ct. at 2359–60 (holding that "implement[ing] the abstract idea . . . on a generic computer" was not sufficient "to transform an abstract idea into a patent-eligible invention"); *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1341–42 (Fed. Cir. 2017) (holding that "using generic computer components and conventional computer data processing activities" was not sufficient to find an "inventive concept"); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613–14 (Fed. Cir. 2016) ("These steps fall squarely within our precedent finding generic computer components insufficient to add an inventive concept to an otherwise abstract idea."); *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324–25 (Fed. Cir. 2016) (holding that generic computer components such as an "interface," "network," and "database" fail to satisfy the "inventive concept requirement" (internal quotation marks omitted)); *Content Extraction*, 776 F.3d at 1347–48 ("There is no 'inventive concept' in [Content Extraction's] use of a generic scanner and computer to perform well-understood, routine, and conventional activities commonly used in industry.").

We have considered Voter Verified's remaining arguments, but find them unpersuasive.

CONCLUSION

For the foregoing reasons, we affirm the district court's dismissal of the complaint under Rule 12(b)(6) because all of the remaining claims of the '449 patent are invalid under § 101.

**AFFIRMED**