# United States Court of Appeals for the Federal Circuit

---

**REALTIME ADAPTIVE STREAMING L.L.C.,**
*Plaintiff-Appellant*

**v.**

**SLING TV, L.L.C., SLING MEDIA, L.L.C., DISH NETWORK L.L.C., DISH TECHNOLOGIES L.L.C.,**
*Defendants-Appellees*

**SLING MEDIA, INC., ECHOSTAR TECHNOLOGIES LLC,**
*Defendants*

---

2023-1035

---

Appeal from the United States District Court for the District of Colorado in No. 1:17-cv-02097-RBJ, Judge R. Brooke Jackson.

---

Decided: August 23, 2024

---

PHILIP WANG, Russ August & Kabat, Los Angeles, CA, argued for plaintiff-appellant. Also represented by PAUL ANTHONY KROEGER, BRIAN DAVID LEDAHL, REZA MIRZAIE.

ADAM SHARTZER, Fish & Richardson P.C., Washington, DC, argued for defendants-appellees. Also represented by

MICHAEL JOHN BALLANCO, RUFFIN B. CORDELL, BRIAN JAMES LIVEDALEN.

———————————

Before MOORE, *Chief Judge*, LOURIE, *Circuit Judge*, and ALBRIGHT, *District Judge*[1].

ALBRIGHT, *District Judge*.

Appellant Realtime Adaptive Streaming LLC appeals from an award of attorneys' fees from the United States District Court for the District of Colorado.

The district court's fees award to defendants was based on six so-called "red flags." It found that those red flags should have served as warning signs to Realtime that its case was fatally flawed. And in "carrying on despite numerous danger signals. . . [plaintiff] accepted the risk of having to reimburse defendants' reasonable attorneys' fees." J.A. 8. The district court found that "the totality of the circumstances," in light of those six red flags, rendered the case exceptional. *Id.* We vacate and remand because the district court abused its discretion in determining the case exceptional for the reasons below.

## BACKGROUND

Plaintiff-Appellant Realtime Adaptive Streaming LLC ("Realtime" or "plaintiff") initially sued DISH and related Sling entities (collectively, "DISH" or "defendants") on August 31, 2017, for alleged infringement of U.S. Patent Nos. 8,275,897 ("the '897 patent"); 8,867,610 ("the '610 patent"); and 8,934,535 ("the '535 patent"). The asserted patents are generally related to digital data compression. The district

———————————

[1]    Honorable Alan D Albright, District Judge, United States District Court for the Western District of Texas, sitting by designation.

court ultimately found the asserted claims of the '610 patent ineligible as abstract under 35 U.S.C. § 101.

Early in the case, defendants filed motions to dismiss and motions for judgment on the pleadings. Defendants asked the district court to find the asserted claims invalid under § 101. J.A. 256–57. The district court denied those motions and, instead, instructed the parties it would rehear any invalidity arguments after claim construction. J.A. 391–96. The district court added that its denial was based in part on other districts' decisions finding similar data compression claims eligible and valid. *Id.* The court remarked during a hearing that it was "satisfied with the merits" of the other district court decisions upholding the eligibility of similar patents. J.A. 391.

In October 2018, the Central District of California issued an order finding, *inter alia*, Claims 15–30 of the '535 patent ineligible under § 101. *Realtime Adaptive Streaming LLC v. Google LLC*, No. 2:18-cv-03629-GW-JC, ECF No. 36 (C.D. Cal. Oct. 25, 2018) (the "*Google* decision"); J.A. 1332–45. The Central District of California determined that Claims 1–14 of the '535 patent were eligible because they were "tied to specific computer systems that 'improve[] computer functionality in some way' rather than being drawn to purely abstract concepts." J.A. 1340 (quoting *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018)). Less than two months later, a magistrate judge in the District of Delaware also found Claim 15 of the '535 patent (as a representative claim) ineligible because it provided "no technical detail describing how to achieve" the results it claims. *Realtime Adaptive Streaming LLC v. Netflix, Inc.*, No. 17-1692, 2018 WL 6521978, at *6 (D. Del. Dec. 12, 2018) (the "*Netflix* decision"); J.A. 1478. Collectively, the district court treated these decisions as the first red flag.

In January 2019, the district court issued its claim construction ruling in this case. J.A. 1184. Concurrently, the

'535 and '610 patents were subject to *inter partes* review ("IPR") proceedings at the U.S. Patent and Trademark Office, Patent Trial and Appeal Board ("Board"). J.A. 1387. Shortly thereafter, in February 2019, the district court stayed the infringement litigation pending the IPR proceedings. J.A. 95 at ECF No. 162. One of those IPR proceedings resulted in Claims 1–14 of the '535 patent being found to be unpatentable on obviousness grounds. This was the third red flag, the second red flag being this Court's decision in *Adaptive Streaming Inc. v. Netflix, Inc.*, 836 F. App'x 900 (Fed. Cir. 2020). Plaintiff then withdrew its claims under the '535 patent. J.A. 1219. The IPR against the '610 patent was terminated as untimely by the Board—a decision this Court affirmed. *Sling TV, L.L.C. v. Realtime Adaptive Streaming LLC*, 840 F. App'x 598 (Fed. Cir. 2021).

Since no IPRs against the '610 patent (the only remaining asserted patent against DISH) remained, the district court lifted the stay on January 15, 2021, almost two years after the stay was entered. According to the district court, defendants' fees started to accrue once the stay was lifted. J.A. 3. Shortly after the stay was lifted, the fourth red flag occurred: the USPTO issued non-final office actions rejecting Claim 1 of the '610 patent as obvious as part of an *ex parte* reexamination. J.A. 7. The district court found it notable that DISH sent Realtime a letter conveying its belief the '610 patent was invalid and expressing its intention to seek attorneys' fees should Realtime continue to press its case. This notice letter became the fifth red flag.

Once expert discovery was completed, the parties filed dispositive motions. As part of this process, defendants submitted the expert declaration of Dr. Alan C. Bovik. J.A. 7. Even though Realtime promptly moved to exclude Dr. Bovik's opinions, the Court treated the Bovik declaration as the sixth and final red flag.

On July 31, 2021, the district court granted DISH's motion for summary judgment of invalidity. *Realtime Adaptive Streaming LLC v. Sling TV L.L.C.*, No. 17-CV-02097-RBJ, 2021 WL 3888263 (D. Colo. July 31, 2021), *aff'd*, No. 21-2268, 2023 WL 3373583 (Fed. Cir. May 11, 2023) (per curiam); J.A. 2001–15. The court found the *Google* and *Netflix* decisions concerning Claim 15 of the '535 patent instructive as to the asserted claims of the '610 patent's subject matter eligibility and the *Alice* Step One analysis. J.A. 2004. Claim 15 of the '535 patent and Claim 1 of the '610 patent are almost identical, except for the added limitation of a "a throughput of a communication channel" found in the '610 patent. Realtime argued that this additional limitation solves a computer-specific problem and is thus not directed to an abstract idea at *Alice* Step One. J.A. 1759–68. The district court disagreed. J.A. 2011. As for *Alice* Step Two, the district court found Realtime presented no genuine issue of fact as to whether the claims at issue in the '610 patent included an inventive concept. *Id.* The district court's order concluding Claims 1, 2, 6, 8–14, 16, and 18 of the '610 patent are directed to ineligible subject matter under § 101 was affirmed by this Court. *Realtime Adaptive Streaming LLC v. Sling TV, L.L.C.*, No. 2021-2268, 2023 WL 3373583 (Fed. Cir. May 11, 2023) (per curiam).

While that finding of invalidity was on appeal, the district court granted DISH's Motion for Attorneys' Fees. The district court's order awarding fees highlighted the aforementioned six "red flags" or danger signals. The court found that "Realtime's dogged pursuit of the case notwithstanding those danger signals renders this an exceptional case." J.A. 8.

## STANDARD OF REVIEW

A court may award fees to the prevailing party in "exceptional cases." 35 U.S.C. § 285. An exceptional case is "one that stands out from others with respect to the

substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

We review an exceptionality determination under an abuse of discretion standard. *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563–64 (2014). To meet the abuse-of-discretion standard, the appellant must show a "clear error of judgment in weighing relevant factors or in basing its decision on an error of law or on clearly erroneous factual findings." *Energy Heating, LLC v. Heat On-The-Fly, LLC*, 15 F.4th 1378, 1382 (Fed. Cir. 2021) (quotations omitted).

DISCUSSION

The district court based its decision, as it must, on "the totality of the circumstances." J.A. 8; *see also Octane Fitness*, 572 U.S. at 554. The district court relied on the six red flags without explaining the weight for each flag. J.A. 1–8. Some of these red flags should not have been accorded any weight. Consequently, we vacate the award of attorneys' fees and remand for the district court to decide again whether attorneys' fees are warranted consistent with this opinion.

A. The *Google* and *Netflix* decisions finding claims of the '535 patent ineligible

The first red flag the district court noted was based on the *Google* and *Netflix* decisions. The district court described these decisions as "highly significant to [the] Court's ultimate determination," with reasoning "featured prominently in [the Court's] order granting summary judgment in this case." J.A. 4–5. Considering that the '610 patent had "nearly the same title," a "virtually identical" specification, and a Claim 1 that was "so similar as to be essentially the same in substance" as Claim 15 of the '535 patent, the district court found that *Google* and *Netflix*

"should have featured prominently in Realtime's thinking about the present case." J.A. 4–5. The district court also found Realtime's attempts to distinguish and criticize *Google* and *Netflix* unpersuasive. *See* J.A. 5.

Realtime contends that *Google* and *Netflix* cannot be red flags. We disagree. Realtime first argues that "the mere fact that Claim 15 of the '535 patent was found ineligible did not render Realtime's § 101 arguments as to the '610 claims frivolous." Appellant's Br. 38. Realtime points to caselaw that § 101 is claim specific and that "it can not be presumed that related patents rise and fall together." *Comair Rotron, Inc. v. Nippon Densan Corp.*, 49 F.3d 1535, 1539 (Fed. Cir. 1995). While Realtime may have correctly quoted the law, it did not correctly understand the district court's reasoning. The district court did not merely presume that the '610 claims should follow the '535 claims, nor did it rely solely on the "virtually identical" specifications. *See* J.A. 4–5. It made a specific finding that Claim 15 of the '535 patent was "essentially the same in substance" as Claim 1 of the '610 patent. J.A. 4. Realtime's cites are therefore inapposite.

Realtime also notes that the *Google* decision denied Google's motion to dismiss for ineligibility under § 101 as to U.S Patent Nos. 9,769,477 ("the '477 patent") and 7,386,046 ("the '046 patent"), as well as Claims 1–14 of the '535 patent. Realtime argues that Claim 15 is therefore distinguishable, as it does not include the throughput limitation present in the '610 patent here. Instead, Realtime argues that Claim 1 is more analogous to the '477 patent Claim 1, which had not been previously shown to have been ineligible, and which also includes a throughput limitation. Realtime also distinguishes Claim 15 on the basis that it could be performed manually by a user, a concern Realtime believes does not apply to the '610 patent. For the same reasons, Realtime also claims that *Netflix* is distinguished.

Realtime's argument that Claim 1 of the '610 patent is more like Claims 1–14 of the '535 patent and the claims of the '477 and '046 patents was not adequately set forth before the district court. Realtime's opposition to DISH's motion for summary judgment of ineligibility set out the following analysis:

> In *Google*, the Central District *denied* defendants' § 101 motion for the vast majority of the challenged claims, including all claims of the related '046 and '477 patents, as well as claims 1-14 of the '535 patent. *Google* at 7-8, 11. Those claims are more like the '610 claims than claim 15 of the '535 patent that were found to be abstract. Indeed, the court's decision supports the patent-eligibility of the '610 claims. *See id.* at 5-6.

J.A. 1767. Absent from the quote above is any justification for Realtime's claim. We agree with the district court that "the response does not provide an explanation of or support for this conclusory statement." J.A. 2012. The district court cannot be faulted for not crediting or considering an argument that Realtime itself failed to develop. As for Realtime's other arguments—that '610 patent Claim 1 is different because it contains the aforementioned throughput limitation; that '610 patent Claim 1 cannot be performed manually; and that *Netflix* erred in treating Claim 15 of the '535 patent as representative—we note that Realtime made them at length in its merits appeal of the district court's ineligibility decision. *See* Principal Brief of Plaintiff-Appellant Realtime Adaptive Streaming L.L.C. at 42–48, *Realtime Adaptive Streaming L.L.C. v. Sling TV, L.L.C.*, No. 21-2268, 2023 WL 3373583 (Fed. Cir. May 11, 2023). None of these arguments stopped a panel of this Court from affirming. *Realtime*, No. 21-2268, 2023 WL 3373583 (per curiam). Accordingly, we conclude the district court did not err in its determination that the *Google* and *Netflix* decisions on Claim 15 of the '535 patent were a

significant red flag to Realtime to reconsider its patent eligibility position of the asserted claims of the '610 patent.

### B. The *Adaptive Streaming* Decision

Along with the *Google* and *Netflix* decisions, the district court also relied on a decision from this Court: the nonprecedential decision in *Adaptive Streaming Inc. v. Netflix, Inc.*, 836 F. App'x 900 (Fed. Cir. 2020). J.A. 6. In that case, this Court affirmed the ineligibility of claims directed to receiving a video signal in one format and broadcasting the signal to other devices in a different, more suitable format. *See Adaptive Streaming*, 836 F. App'x at 901. The claims at issue included selecting the different format "based at least in part on" parameters for alternate formats and dynamically selecting a video signal with a different format "in response to a change in a bandwidth condition." *Id.* at 901–02. The district court acknowledged that *Adaptive Streaming* was not binding, yet nevertheless treated it as a red flag. J.A. 6. The district court` also emphasized that DISH's notice of intent to move for summary judgment of invalidity highlighted *Adaptive Streaming*. J.A. 6.

DISH argues that *Adaptive Streaming* is "highly applicable to the facts here." Appellees' Br. 33. DISH says the district court correctly found it to be persuasive caselaw that should have impacted Realtime's thinking. *Id.* DISH claims a "close factual relationship" between the claims at issue and the *Adaptive Streaming* claims. *Id. Adaptive Streaming* also characterized past precedential decisions of this Court as holding that encoding image data and converting formats are abstract ideas. 836 F. App'x at 903; *see also Two-Way Media Ltd. v. Comcast Cable Commc'ns*, 874 F.3d 1329 (Fed. Cir. 2017); *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322 (Fed. Cir. 2017); *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349 (Fed. Cir. 2023). Ultimately, DISH's position is that "*Adaptive Streaming* merely applied existing law to a patent" that was "factually

close enough to the '610 patent that Realtime should have considered it a red flag." Appellees' Br. 35–36.

Unlike the *Google* and *Netflix* decisions, the *Adaptive Streaming* decision should not have been treated as a red flag. *Google* and *Netflix* were significant warnings to Realtime in large part because they were about a similar patent in the same family with nearly identical claim language. *Adaptive Streaming*, on the other hand, was about a different technology entirely. Without more, such as a side-by-side analysis of all limitations of a claim of the '610 patent and the claims at issue in *Adaptive Streaming,* DISH simply did not adequately show that the patent infringement claim had been rendered exceptionally meritless. The district court erred in finding that the *Adaptive Streaming* decision should have put Realtime on notice that its patent claims were meritless when deciding whether to award attorneys' fees.

### C.  The Board's invalidation of the '535 patent

We turn next to the two Board decisions invalidating Claims 1–14 of the '535 patent for anticipation and obviousness. The district court cited the Board decisions in its analysis, but failed to explain why the decisions were relevant in awarding attorneys' fees. J.A. 6.

DISH argues that the lack of novelty and obviousness of the '535 patent's claims bear on *Alice* Step Two with regard to the claims at issue in this case. Appellees' Br. 36–38. DISH argues that the Board's decisions undercut Realtime's allegation that the '610 patent has an unconventional arrangement of claim elements. *Id.* When opposing summary judgment of subject matter ineligibility, Realtime pointed to a Board decision finding that the related '046 patent's "tracking throughput" limitation was a point of novelty used to distinguish the prior art. J.A. 1771–72. DISH claims that considering the similarity of the '535 and '610 patents, the district court did not err in treating the Board decisions as red flags. We disagree.

At best, the two Board decisions establish that the throughput limitation was known in the prior art. *See Netflix, Inc. v. Realtime Adaptive Streaming, LLC*, No. IPR2018-01169, 2020 WL 120083, at *9 (P.T.A.B. Jan. 10, 2020). But that is not enough to establish conventionality at *Alice* Step Two. We have held that "[w]hether a particular technology is well-understood, routine, and conventional goes beyond what was simply known in the prior art." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). "The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional." *Id.*

And even if all limitations of the '610 patent, including selecting a compression algorithm based upon a throughput of a communications channel, were conventional, that should not be fatal to Realtime. "[A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). There simply was not enough in the Board decisions—which concerned different sections of the Patent Act and did not analyze whether anything in the prior art was well-understood, routine, or conventional—to put Realtime on notice that its arguments regarding the eligibility of its patent claims were entirely without merit.

### D.   The reexamination of the '610 patent finding invalidity under 35 U.S.C. § 102 and § 103

The next red flag involved two non-final office actions issued during the *ex parte* reexamination of the '610 patent. These office actions rejected Claim 1, among others, as unpatentable for obviousness. After the district court issued its opinion awarding attorneys' fees, the Board affirmed these obviousness rejections.

At the threshold, it is unclear whether these office actions were used by the district court as red flags. The district court wrote that the office actions "*could have* served

as additional red flags regarding the viability of Realtime's case." J.A. 7 (emphasis added). To the extent that the district court did rely on the office actions as red flags, its analysis is lacking for many of the same reasons discussed above regarding the '535 patent IPR. While the office actions are at least about the same patent at issue here, that fact is offset by the fact that the examiner and the Board used the broadest reasonable interpretation standard of claim construction. *See* J.A. 1685. Indeed, the Board considered and *expressly rejected* the district court's construction of "throughput" in favor of a broader construction. J.A. 2888–2901. On this record, the district court failed to adequately explain how these Board decisions sufficed to support a finding of exceptionality.

### E.   DISH's notice letter to Realtime

Next, we address DISH's February 11, 2021 letter to Realtime's counsel—another red flag enumerated by the district court. J.A. 7. In its letter, DISH reinforced its invalidity position, asserting that "[e]ven a casual comparison of the '610 patent asserted claims to the now invalid claims of the '535 patent reveals that the '610 asserted claims are likely to suffer the same ineligibility finding." J.A. 2146. In doing so, DISH emphasized the similarities of the claims of the '610 patent to those of the *Adaptive Streaming* decision. *Id.* The letter, also referencing the *Google* and *Netflix* decisions regarding the '535 patent, urged Realtime to drop its infringement claims and warned of the substantial litigation expense that would be incurred if the case continued. *See* J.A. 2147 ("If Realtime continues its pursuit of this litigation—despite all of the facts and legal determinations indicating Realtime's litigation positions lack substantive merit—Defendants will seek costs, fees, and sanctions against Realtime and jointly and severally against its counsel . . . ."). It is not clear what it is about the notice letter, viewed independently of the *Google* and *Netflix* decisions it referenced, that constitutes a red flag. The district court did not say. Instead, the district

court merely summarized the letter in a single sentence and noted that Realtime chose not to dismiss its claims. J.A. 7.

If such a notice letter were sufficient to trigger § 285, then every party would send such a letter setting forth its complaints at the early stages of litigation to ensure that—if it prevailed—it would be entitled to attorneys' fees. This is not to say that communications between litigants could not be considered in an exceptionality determination.

Although the letter highlighted the *Google* and *Netflix* decisions, the letter contains no analysis sufficient to put the patentee on notice that its arguments regarding ineligibility are so meritless as to amount to an exceptional case. In the entirety of the five-page letter, only two paragraphs were dedicated to discussing the ineligibility of the asserted claims of the '610 patent. *See* J.A. 2146. Further still, these two (conspicuously short) paragraphs were riddled with conclusory statements asserting that the claims of the '610 patent were similar to those of the '535 patent and to the claims of the *Adaptive Streaming* patent. No further analysis, nor specific comparisons, were provided. Nor did DISH follow up regarding its allegations after Realtime responded to the notice letter eleven days later. Simply being on notice of adverse case law and the possibility that opposing counsel would pursue § 285 fees does not amount to clear notice that the '610 claims were invalid and is therefore not sufficient to support an exceptionality finding in this case.

### F.   Dr. Bovik's analysis

The final red flag for the district court was the opinions of Dr. Alan C. Bovik—DISH's expert witness. J.A. 7. Dr. Bovik submitted these opinions in declarations supporting DISH's motions for summary judgment of invalidity generally and subject matter ineligibility specifically. J.A. 7; *see also* J.A. 100–01. The district court noted that Realtime moved to exclude Dr. Bovik's opinions under Federal Rule

of Evidence 702.  J.A. 7.  However, the opinions at issue were on non-infringing alternatives, making them irrelevant to this appeal.  J.A. 7; *see also* J.A. 101.  The district court continued: "I understand that parties to litigation typically are not persuaded by the opinions of the opposing party's retained expert.  In my view, however, Dr. Bovik's opinions merited serious consideration, at least as another red flag concerning the potential resolution of the invalidity issue."  J.A. 7.

DISH retained Dr. Bovik, who opined that the '610 patent is ineligible—and Realtime retained Dr. V. Thomas Rhyne, who opined the opposite.  *See* J.A. 51–53.  Indeed, Dr. Rhyne reviewed the relevant section of Dr. Bovik's report and offered specific disagreements.  *See* J.A. 1822–34, 1842.  This is all typical of the ordinary, unexceptional patent infringement case.  Realtime and Dr. Rhyne developed critiques of and counterarguments to Dr. Bovik's opinions.  *See* J.A. 1822–34.  That is hardly the failing to give "serious consideration" to Dr. Bovik's opinions that the district court tasked Realtime with.  *See* J.A. 7.  While Dr. Bovik may have been more persuasive than Dr. Rhyne, that fact alone cannot properly establish Dr. Bovik's opinions should have put Realtime on notice that its arguments regarding the asserted claims were so without merit as to amount to an exceptional case.

DISH advances several arguments in support of the district court's determination that this case is exceptional.  None have merit.  DISH first points to the district court's endorsement of Dr. Bovik's opinions in its order granting summary judgment of ineligibility, arguing that the citations to Dr. Bovik "crystallized many of the glaring deficiencies with Realtime's eligibility arguments."  *See* Appellee's Br. at 43; J.A. 2013–14.  The district court was free to rely on Dr. Bovik's opinions in ruling on the subject matter eligibility motion.  DISH's citations only show that Realtime and Dr. Rhyne took a contrary position.  That is insufficient on its own to support a finding of

exceptionality.  Next, in response to Realtime's opening brief, DISH notes that Realtime did not provide a direct rebuttal declaration from Dr. Rhyne. Appellees' Br. 43. But we agree with Realtime that such a declaration was unnecessary, especially here, where the parties exchanged various expert declarations covering similar issues.  *See, e.g.*, J.A. 1406–15 (Bovik Decl.); J.A. 1822–34 (Rhyne Decl.). DISH also argues that the district court is better positioned to make the discretionary call that Dr. Bovik's opinion warranted serious consideration.  Appellees' Br. 44.  That may be correct as a general principle, but the district court's "discretion is not unbridled." *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 915 (Fed. Cir. 2012).  Without at least an explanation for why Realtime and Dr. Rhyne did not show "serious consideration" of Dr. Bovik's opinions, J.A. 7, the district court's analysis is insufficient to support a finding of exceptionality.

In sum, the district court erred in its justification of Dr. Bovik's opinions as a red flag.

## CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive.  We vacate the district court's opinion awarding attorneys' fees and remand for further consideration in light of this opinion.  We offer no opinion on the correct disposition of DISH's attorneys' fees motion on remand.

## VACATED AND REMANDED

### COSTS

No costs.